**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

COLEMAN WAYNE GRAY,
<u>Petitioner-Appellee,</u>

v.

J. D. NETHERLAND, Warden,
Mecklenburg Correctional Center,
<u>Respondent-Appellant.</u>

No. 94-4009

COLEMAN WAYNE GRAY,
<u>Petitioner-Appellant,</u>

v.

J. D. NETHERLAND, Warden,
Mecklenburg Correctional Center,
<u>Respondent-Appellee.</u>

No. 94-4011

On Remand from the United States Supreme Court.
(S. Ct. No. 95-6510)

Decided on Remand: October 31, 1996

Before WILKINSON, Chief Judge, and HALL and WILKINS,
Circuit Judges.

_____

Remanded with directions by published opinion. Chief Judge Wilkin-
son wrote the opinion, in which Judge Hall and Judge Wilkins joined.

_____

**COUNSEL**

James S. Gilmore, III, Attorney General of Virginia, John H. McLees,
Jr., Assistant Attorney General, OFFICE OF THE ATTORNEY

GENERAL, Richmond, Virginia, for Appellant. Donald R. Lee, Jr., FRAMME, MACAULAY & LEE, L.C., Richmond, Virginia; Mark Evan Olive, VIRGINIA CAPITAL REPRESENTATION RE-SOURCE CENTER, Richmond, Virginia, for Appellee.

_____

## OPINION

WILKINSON, Chief Judge:

This case comes before us on remand from the Supreme Court. We must determine whether petitioner Coleman Wayne Gray raised a claim of "prosecutorial misrepresentation" as to the nature of evidence to be used during the sentencing phase of a capital murder trial. We hold that this claim was not raised before either the state courts or the federal courts prior to being raised before the United States Supreme Court on certiorari. Accordingly, we remand this case to the district court with instructions to dismiss the habeas petition.

I.

The facts of this case are discussed at length in earlier opinions. See Gray v. Netherland, 116 S.Ct. 2074 (1996); Gray v. Thompson, 58 F.3d 59 (4th Cir. 1995); Gray v. Virginia, 356 S.E.2d 157 (Va. 1987). We therefore review them only briefly here.

On May 2, 1985, Gray and an accomplice, Melvin Tucker, abducted Richard McClelland, the manager of Murphy's Mart in Portsmouth, Virginia, as McClelland was driving away from work. Gray and Tucker took McClelland's car and drove back to Murphy's Mart, where they forced him at gunpoint to unlock the store. After stealing between $12,000 and $13,000 in cash, the two drove McClelland to a remote side road. Gray then took McClelland behind the car and ordered him to lie down. As McClelland pleaded for his life, Gray fired six shots into the back of his head with a .32 caliber handgun. After the killing, Gray and Tucker drove McClelland's car back to the intersection where they had abducted him. Telling Tucker that he wanted to destroy the car as evidence, Gray doused it with gasoline and set it on fire.

2

On the first day of Gray's trial, Monday, December 2, 1985, defense counsel asked the trial court to order the prosecution to reveal evidence it planned to introduce during the penalty phase of the trial. The Commonwealth Attorney responded that he intended to introduce witnesses who would testify that Gray told them he had killed a mother and daughter named Lisa and Shanta Sorrell. When defense counsel pressed the Commonwealth Attorney on this issue, the prosecutor told defense counsel that he would not introduce other evidence related to the Sorrell murders.

On Thursday, December 5, the jury convicted Gray on all counts. That evening, the Commonwealth Attorney contacted defense counsel and informed them that he would introduce additional evidence with respect to the Sorrell murders. The additional evidence included testimony by Detective Michael Slezak, who had investigated the Sorrell murders, testimony by the state medical examiner who performed the victims' autopsies, and photographs and forensic evidence from the crime scene. The additional evidence would be put on to demonstrate the striking similarity of the Sorrell murders to the murder of Richard McClelland. Lisa Sorrell had, like McClelland, been killed by being shot six times in the back of the head with a .32 caliber gun. Lisa Sorrel's body was found in her car, which, like McClelland's, had been set on fire. Shanta Sorrell, her daughter, was found in the trunk of the car and had died of smoke inhalation.

The following morning, Friday, December 6, the penalty phase of the trial began. The defense moved for exclusion of the evidence of the Sorrell murders on the grounds that it exceeded the scope of unadjudicated-crime evidence admissible for sentencing under Virginia law. Counsel also argued that the additional evidence had taken them by surprise and that they were not prepared to address it. Defense counsel, however, never requested a continuance, and the trial judge denied the motion to exclude.

The prosecution proceeded to put on the Sorrell murder evidence and evidence of other crimes committed by Gray in order to demonstrate Gray's "future dangerousness," an aggravating factor under the Virginia death penalty statute. The jury fixed Gray's sentence at death, finding the aggravating factors of both future dangerousness and vileness to be present in his case. After a presentence hearing

3

held before the trial judge on January 27, 1986, the court entered judgment on the verdicts for all the charges against Gray and sentenced him to death. The Virginia Supreme Court affirmed Gray's conviction and sentence, Gray v. Virginia, 356 S.E.2d 157, and the U.S. Supreme Court denied certiorari. 484 U.S. 873 (1987). Gray then instituted state habeas proceedings. The state habeas court dismissed the petition, the Virginia Supreme Court summarily affirmed the dismissal, and the U.S. Supreme Court again denied certiorari, Gray v. Thompson, 500 U.S. 949 (1991).

Thereafter, Gray filed the instant petition for a writ of habeas corpus alleging numerous constitutional violations in both the guilt and sentencing phases of his trial. Initially, the district court dismissed the habeas petition finding Gray's claims to be either without merit or procedurally barred. On Gray's motion, however, the district court amended its judgment to consider whether "evidence during the penalty phase pertaining to the Sorrell murders violated Gray's due process rights." After an evidentiary hearing on this claim, the district court granted Gray's habeas petition on the grounds that Gray "was denied due process of law under the Fourteenth Amendment of the United States Constitution because the Commonwealth failed to provide fair notice that evidence concerning the Sorrell murders would be introduced at his penalty phase."

The Commonwealth then appealed to this court, arguing that the district court's grant of the writ was based upon a new rule of constitutional law in violation of Teague v. Lane, 489 U.S. 288 (1989). We agreed, holding that Gray's notice-of-evidence claim "was not compelled by existing precedent at the time his conviction became final." Gray v. Thompson, 58 F.3d at 64. We reversed the judgment granting the writ, rejected petitioner's cross-appeals from the dismissal of several other claims, and remanded with directions that the petition be dismissed. Id. at 67.

On January 5, 1996, the U.S. Supreme Court granted certiorari limited to the questions of whether Gray's notice-of-evidence claim stated a new rule and whether the Commonwealth violated petitioner's due process rights under Brady v. Maryland , 373 U.S. 83 (1963), by withholding evidence exculpating him from responsibility for the Sorrell murders. The Court found Gray's Brady claim to be procedur-

4

ally barred because it had not been raised in state habeas proceedings, Gray v. Netherland, 116 S.Ct. at 2080-81, and agreed with this court's holding that Gray's notice-of-evidence claim would require the adoption of a new constitutional rule. Id. at 2084.

However, the Supreme Court also perceived Gray to be raising a "`misrepresentation' claim, which alleges that the Commonwealth violated due process by misleading petitioner about the evidence it intended to use at sentencing." Id. at 2081. The Commonwealth argued that the claim had never been "argued before in any court." Id. at 2082. The Supreme Court remanded the case with instructions to determine whether the misrepresentation claim had been previously raised and to "consider the claim and preserved defenses as appropriate." Id. at 2082-83. In order to assist our consideration of these matters, we directed the parties on remand to file supplementary briefs of up to 35 pages and reply briefs of up to 10 pages in length.

II.

We begin by reviewing the nature of Gray's misrepresentation claim. Gray's clearest statement of the claim appears in his brief before the United States Supreme Court:

> The narrow, central question presented in this case is whether due process permits a prosecutor to misrepresent the nature of the state's intended case in aggravation, with the purpose and effect of denying the defendant the opportunity to prepare and contest the critical issues at a capital sentencing hearing.

Brief for Petitioner in Supreme Court at 30. Gray's claim does not rest on the fact that the Commonwealth Attorney provided late notice but rather alleges that Gray was damaged by the notice he did receive. In particular, Gray alleges that the prosecution told him that he would introduce only the testimony of jailhouse "snitches" pertaining to the Sorrell murders when he intended all along to introduce crime scene photographs, autopsy reports, Detective Slezak's testimony and the like. Gray thus complains that the Commonwealth Attorney lulled him into a false sense of security about the evidence that would be presented at the penalty phase of the trial, thereby preventing an

5

investigation he might have otherwise undertaken into the Sorrell murders:

> Had Gray's request that the prosecution disclose what it intended to present regarding the Sorrell murders been denied, or had the prosecutor not stated that he intended to present only jailhouse "snitch" testimony, then Gray's trial counsel would have known that essentially anything was fair game, and they would have adjusted investigation, preparation, and trial strategy accordingly.

Reply Brief for Petitioner in Supreme Court at 7.

With the nature of this claim in mind, we now turn to the question of whether Gray properly preserved it. The general principles governing the preservation of constitutional challenges to state convictions are well settled. "[A] claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts which entitle the petitioner to relief." Gray v. Netherland, 116 S.Ct. at 2081. A statement of facts sufficient to support a constitutional claim without reference to the legal basis for that claim is not sufficient. See Picard v. Connor, 404 U.S. 270, 277 (1971). When the appeal is to a constitutional guarantee as broad as "due process," it is incumbent upon a habeas petitioner to refer to the "particular analysis developed in cases" and not just to due process in general in order to present his claim. See Gray v. Netherland, 116 S.Ct. at 2081 (citation omitted); see also Anderson v. Harless, 459 U.S. 4, 7 (1982). With these principles in mind, we shall examine the record in accordance with the Supreme Court's instructions.

A.

We first review the state court proceedings. An examination of Gray's claims in the state courts reveals that he failed to press this misrepresentation theory as a distinct legal claim at any level -- from his initial sentencing hearing on December 6, 1985 to his final appeal to the Virginia Supreme Court from the dismissal of his state habeas corpus petition.

6

Gray's first opportunity to raise his affirmative misrepresentation claim was at the penalty phase of his trial on December 6, 1985 when he presented his motion to exclude the Sorrell murder evidence beyond the statements of Melvin Tucker. If Gray believed he had been misled, he never indicated as much to the trial judge. Instead, he focused on distinguishing his case from the rule in Virginia that "evidence of prior unadjudicated criminal conduct . . . may be used in the penalty phase to prove the defendant's propensity to commit criminal acts of violence in the future." Watkins v. Commonwealth, 331 S.E.2d 422, 436 (Va. 1985). Gray also claimed that the evidence should be excluded because he was surprised by the short notice provided by the Commonwealth Attorney. Rather than claiming that he had been tricked or affirmatively misled by the prosecution, Gray alleged that the state had not complied with Peterson v. Commonwealth, 302 S.E.2d 520 (Va. 1983), which held that the "preferred practice" in Virginia was for the Commonwealth to advise the defense of evidence to be used in the penalty phase. Id. at 526.

Gray was given another opportunity to present his misrepresentation claim at his presentence hearing nearly two months later on January 27, 1986, and again he never even hinted at the misrepresentation claim he now advances. At the presentence hearing, Gray continued his attempt to distinguish Watkins and did not even raise lack of notice as a basis for overturning his sentence. Gray's silence on the misrepresentation claim continued during the twenty-one days between the date his sentence was entered and the date it became final. See Va. S. Ct. Rule 1:1.

Gray likewise failed to raise the misrepresentation claim on his direct appeal to the Virginia Supreme Court. In his arguments on the Sorrell murder evidence before that court, Gray again primarily concentrated on his attempt to distinguish his case from the rule in Watkins. He also resumed his argument based on Peterson:

> Pursuant to Peterson, Gray's counsel moved the Trial Court, prior to the commencement of the guilt trial on December 2, 1985, to require the Commonwealth to reveal the Commonwealth's intended evidence should the penalty phase be held. The Commonwealth withheld this information from

7

> Defense Counsel until the late afternoon of December 5th, 1985, upon the conclusion of the guilt trial.

Brief on Direct Appeal to the Virginia Supreme Court at 3. Gray argues that this paragraph squarely placed the issue of misrepresentation before the Virginia courts. We disagree. In this argument, Gray does not allege that the Commonwealth Attorney's misrepresentation that he would not use evidence beyond Gray's own statements caused him injury. Rather, he states a claim that the Commonwealth did not comply with the "preferred practice" of providing the defendant notice of penalty phase evidence. In short, Gray's argument was one that he had a constitutional right to notice of penalty phase evidence which the state planned to use -- the very argument that the Supreme Court held "would require the adoption of a new constitutional rule." Gray v. Netherland, 116 S.Ct. at 2084.

We next examine Gray's arguments in his state habeas corpus proceedings. In Virginia, "[n]o writ [of habeas corpus] shall be granted on the basis of any allegation the facts of which petitioner had knowledge at the time of filing any previous petition." Va. Code Ann. § 8.01-654(B)(2). In Barnes v. Thompson , 58 F.3d 971 (4th Cir. 1995), we applied section 8.01-654(B)(2) as a bar to petitioner's claim that the Commonwealth had failed to disclose exculpatory evidence under Brady v. Maryland, upholding the Virginia Supreme Court's finding that "all of the facts on which the current petition was based were either known or available to the petitioner." Id. at 974 (citation omitted). We applied the statute to similar effect in Stockton v. Murray, 41 F.3d 920 (4th Cir. 1994), holding that a prisoner's Brady claim was barred under section 8.01-654(B)(2) because the prisoner "knew of, or could reasonably have discovered, the factual bases" for his claims. Id. at 924. Indeed, the Supreme Court explicitly relied on section 8.01-654(B)(2) in finding that Gray's Brady claim was barred because he "knew the grounds of [that] claim when he filed his first [state habeas] petition." Gray v. Netherland, 116 S.Ct. at 2080-81.

Gray has presented no argument that he was unaware of the facts that make up his misrepresentation claim at the time of the filing of his state habeas petition. Indeed, he clearly would have had knowledge of the facts supporting his misrepresentation claim as early as

8

the evening of December 5, 1985, when the Commonwealth Attorney informed him that he would be introducing evidence at the penalty phase of Gray's trial beyond Gray's own statements to Melvin Tucker that he had committed the Sorrell murders. It is therefore clear that if Gray failed to raise the misrepresentation claim at the time of his first habeas petition, the procedural bar of section 8.01-654(B)(2) would establish an adequate and independent ground for Gray's conviction and sentence, and thus would preclude our review of the misrepresentation claim on its merits. Teague, 489 U.S. at 298; see also Barnes, 58 F.3d at 974.

The record yields no evidence that Gray raised his misrepresentation claim on his petition for habeas corpus in the Virginia courts. Instead, Gray emphasized lack of notice as a basis for relief. In his state habeas corpus petition, Gray states that "[t]he Commonwealth did not disclose its intention to use the Sorrell murders as evidence until such a late date that it was impossible for Gray's defense counsel to reasonably prepare for its use." Petition for Writ of Habeas Corpus in Virginia Circuit Court at 39. He does not, however, indicate that he was somehow lulled or tricked by the Commonwealth Attorney's initial indication that he would present only witnesses who would testify that Gray told them he had committed the Sorrell murders. The closest he comes to making this claim is his assertion that the use of the Sorrell evidence was "simply outrageously unfair and made a mockery of Gray's rights to due process of law under the Fourteenth Amendment . . . ." Id. at 40. This general reference to due process, however, is much too vague to meet the specificity requirement of Anderson v. Harless, 459 U.S. 4 (1982), and was inadequate to "provide the [Virginia] courts with a `fair opportunity' to apply controlling legal principles to the facts bearing on his constitutional claim." Anderson, 459 U.S. at 6, citing Picard, 404 U.S. at 276-77.

In his appeal to the Virginia Supreme Court from the dismissal of his state habeas petition, Gray merely restated his lack-of notice claim and asked the court to "reexamine [its] ruling in the [direct appeal] as it relates to . . . the Sorrell murders." Petition Appealing Denial of State Habeas Corpus Petition at 28. Nowhere in his arguments is there anything resembling the misrepresentation claim Gray later pressed before the U. S. Supreme Court.

9

A procedural default may only be excused on a showing of "cause and prejudice." Coleman v. Thompson, 501 U.S. 722, 750 (1991). In his briefs, Gray does not argue that he had any cause for not raising his misrepresentation claim before the Virginia courts, and we find none now. Even if Gray could show cause for his default, however, he has failed to demonstrate that he was prejudiced by the Commonwealth Attorney's allegedly misleading notice. In order to demonstrate prejudice Gray would have to demonstrate that the allegedly misleading notice "worked to his actual and substantial disadvantage, infecting his [sentencing] with error of constitutional dimensions." Barnes, 58 F.3d at 977, quoting United States v. Frady, 456 U.S. 152, 170 (1982).

At the heart of Gray's misrepresentation claim is the assertion that he would have been able to discover various exculpatory evidence as to Gray's involvement in the Sorrel murders if only he had been informed of the full scope of the Commonwealth Attorney's evidence on the Sorrell murders on December 2, 1985. Specifically, Gray asserts that he would have more carefully researched evidence pointing towards Timothy Sorrell, Lisa Sorrell's husband, as the culprit in those murders. The facts of this case, however, undermine Gray's claim that he would have undertaken such an investigation. On the evening of December 5, 1985, Gray became aware of the full scope of the evidence that would be used against him in the penalty phase. Almost two months passed between the penalty phase of his trial and his presentence hearing on January 27, 1986. Another 21 days passed between the time the judge entered his sentence and when the sentence became final. Yet, during this period, despite the fact that Timothy Sorrell's status as a suspect in the Sorrell murders was widely reported in the local media even before the McClelland murder was committed, Gray did not conduct the extensive investigation he claimed he would have undertaken between December 2, 1985 and December 6, 1985 if the Commonwealth Attorney had not "misled" him. His failure to conduct an investigation into the Sorrell murders when he had the opportunity indicates that the Commonwealth Attorney's supposed misrepresentation concerning the scope of the Sorrell murder evidence did not prejudice him.

In sum, Gray's misrepresentation claim was not raised at any point in the state court proceedings. Further, Gray has failed to demonstrate

10

the combination of cause and prejudice that would excuse this procedural default.

B.

We next turn to the federal record. Gray alleges that he raised his misrepresentation claim in his federal habeas petition before the district court and before this court in the earlier appeal. Furthermore, Gray contends that the Commonwealth did not raise the procedural bar of section 8.01-654(B)(2) in either forum. If Gray's contentions are correct, the Commonwealth would have waived its right to raise section 8.01-654(B)(2) as an affirmative defense to Gray's misrepresentation claim. <u>Jenkins v. Anderson</u>, 447 U.S. 231, 234 n.1 (1980). On the other hand, if Gray failed to raise the misrepresentation claim in the earlier federal habeas proceedings, the Commonwealth may assert the procedural bar and foreclose further consideration of Gray's misrepresentation claim.

Review of the prior federal proceedings reveals no misrepresentation claim raised with the clarity required by <u>Picard</u> and <u>Anderson</u>. In his federal habeas petition, Gray describes the legal grounds for his claim with respect to the Sorrell murders in terms of inadequate notice:

> The Commonwealth did not disclose its intentions to use the Sorrell murders as evidence against Gray until such a late date that it was impossible for Gray's defense counsel reasonably to prepare or defend against such evidence at trial. <u>Because of the late notice</u> . . . Gray could not adequately prepare to defend his innocence regarding the Sorrell murders.

Petition for Writ of Habeas Corpus at 21 (emphasis added). Furthermore, during a May 17, 1993 hearing on whether the district court's initial judgment dismissing the petition should be altered or amended, Gray's counsel described the Sorrell claim as being based on the fact that "Mr. Gray's attorneys had essentially zero <u>notice</u> . . . of the fact that this matter was going to be raised." (emphasis added).

11

The Commonwealth reasonably understood Gray to be raising a claim of inadequate notice and characterized it as such when paraphrasing Gray's claims in its Brief in Support of Motion to Dismiss in the District Court. "Petitioner was given inadequate notice of the evidence which the Commonwealth intended to introduce . . . ." Brief at 18 (emphasis added). Gray would have us place emphasis on the Commonwealth's use of the phrase "intended to introduce" and argues that this phrase indicates the Commonwealth's understanding that the claim was actually one of prosecutorial misrepresentation. This tortuous interpretation of the Commonwealth's phrase ignores the obvious emphasis on "inadequate notice" and does not begin to approach the specificity required by Picard. The Commonwealth understood the claim as we understand it -- that Gray had inadequate notice of the evidence that the Commonwealth planned to introduce, not that the Commonwealth deliberately misled him.

The district court, on Gray's motion, amended its initial judgment dismissing Gray's petition and reconsidered the petition for habeas corpus in order to determine whether "the admission of evidence during the penalty phase pertaining to the Sorrell murders violated Gray's due process rights." When the Commonwealth asked the district court for a more refined definition of the issues at stake, the court failed to provide one. Consequently, the Commonwealth reasonably understood that the Sorrell evidence was being disputed on the grounds raised by Gray in his petition -- lack of notice. Indeed, this appears to have been the understanding of Gray's attorneys as well. During an evidentiary hearing on the habeas petition, Gray's counsel had an opportunity to question C. Phillips Ferguson, the prosecuting attorney at Gray's trial. Gray's counsel did not question whether Ferguson had intentionally misled him as to the scope of the Sorrell murder evidence but instead focused on issues such as the prosecutor's understanding of his duty to disclose exculpatory evidence under Brady v. Maryland.

The district court shared the understanding that Gray's legal claim was based on lack of notice. In its opinion, the court clearly indicated that it was granting the writ on the basis that Gray was "deprived of fair notice." The court relied on cases such as Gardner v. Florida, 430 U.S. 349 (1977), and Smith v. Estelle, 602 F.2d 694 (5th Cir. 1979), which were cited by Gray in this court and in the Supreme Court to

12

support his lack-of-notice claim. Some of the district court's findings could suggest that Gray had presented facts supporting a misrepresentation claim. For example, the district court states, "Despite the Commonwealth Attorney's previous unequivocal pledge that the only evidence to be introduced was certain statements made by Gray, Ferguson had arranged to present . . . additional evidence at the penalty phase." Facts alone, however, without any articulation of the legal grounds for a claim, are not sufficient to raise an issue before a court. "[T]he petitioner must explain how those alleged events establish a violation of his constitutional rights." Mallory v. Smith, 27 F.3d 991, 994 (4th Cir. 1994) (citation omitted). Gray failed to argue misrepresentation as a legal basis for relief, see Picard, 404 U.S. at 276-77, and it is unsurprising that the district court did not rule on that ground when it granted the writ.

A review of Gray's arguments before this court on the Commonwealth's appeal from the grant of the writ also fails to produce any indication that Gray asserted a distinct misrepresentation claim. Although Gray did raise facts which conceivably supported such a claim, he did not argue misrepresentation on legal grounds. He thus failed to alert the Commonwealth to the necessity of asserting any affirmative defense of procedural default. Instead, Gray cited Gardner and Smith v. Estelle to support his claim that the lack of notice by the Commonwealth Attorney prevented him from having "a fair opportunity to challenge the accuracy or materiality of the evidence presented by the prosecution." Opening Brief for Petitioner-Appellee at 25. Indeed, the cases cited by Gray in the Supreme Court to support his recent misrepresentation claim, In re Ruffalo , 390 U.S. 544 (1968); Raley v. Ohio, 360 U.S. 423 (1959); and Mooney v. Holohan, 294 U.S. 103 (1935), were never referenced by Gray before this court or the district court prior to his appearance before the Supreme Court.

In our initial opinion in this matter, we made no reference to any distinct claim of misrepresentation. See Gray v. Thompson, 58 F.3d 59 (4th Cir. 1995). Gray claims that he raised this argument, but the court mistakenly overlooked it. If this is the case, it is difficult to understand why Gray failed to raise this as a grounds for granting his Petition for Rehearing. Instead, in his petition, Gray, as he did in his initial briefs before this court, relied on inadequate notice as the legal basis for his claim: "The crux of Gray's claim is that the Common-

13

wealth unfairly ambushed him by giving insufficient notice." Petition for Rehearing at 1 (emphasis added). Gray's continued reliance on lack of notice and his failure to raise misrepresentation as a distinct legal claim before this court undercuts his contention that he vigorously pressed misrepresentation in the first instance.

Throughout the proceedings prior to his appearance before the United States Supreme Court, Gray never raised any legal claim of misrepresentation. At best, he can point to oblique references to such a theory and to scattered words such as "intentionally" and "ambush." What Gray has failed to show is that the misrepresentation claim was presented "face-up and squarely" to any court-- state or federal -- prior to the Supreme Court. Mallory, 27 F.3d at 995 (citations omitted). The Supreme Court, however, is not the appropriate forum in which to raise an issue for the first time. Yee v. Escondido, 503 U.S. 519, 533 (1992). Because we find that Gray failed to articulate his misrepresentation theory prior to appearing before the Supreme Court, we hold that the Commonwealth is free to maintain its defense of procedural default under section 8.01-654(B)(2) and that Gray is not entitled to relief.

III.

We remand this case to the district court with directions to dismiss the habeas petition. In view of the Supreme Court's opinion remanding the case to us, we think the respectful course is to stay both our mandate and the execution until such time as the Supreme Court rules on any petition for certiorari.

REMANDED WITH DIRECTIONS

14