**Michael Carl GEORGE, Petitioner,**

v.

**Ronald J. ANGELONE, Director, Virginia Department of Corrections, Respondent.**

Civ. A. No. 3:95CV001.

United States District Court,
E.D. Virginia,
Richmond Division.

Oct. 10, 1995.

Gerard Joseph Roerty, Jr., Stephen Atherton Northup, Mays and Valentine, Richmond, VA, for petitioner Michael Carl George.

Robert Beman Beasley, Jr., Office of the Attorney General, Richmond, VA, John Hill McLees, Jr., Office of the Attorney General, Richmond, VA, for respondent Don Angelone, Director, Virginia Department of Corrections.

---

## MEMORANDUM

MERHIGE, District Judge.

On June 12, 1995, Michael Carl George ("George") filed a Petition for a Writ of Habeas Corpus against Respondent, Ronald Angelone, the Director of the Virginia Department of Corrections, pursuant to 28 U.S.C. § 2254. This matter comes before the Court on Respondent's motion to dismiss George's Petition for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The motion has been fully briefed and argued by the parties and is ripe for disposition.

## Background

### Procedural Posture

In 1990, George was charged with capital murder during the course of a robbery while armed with a deadly weapon in violation of Virginia Code section 18.2–31(d). The Commonwealth also charged him with robbery, abduction with intent to defile, and use of a firearm in the commission of capital murder. The case was tried by a jury in December of 1990, who returned guilty verdicts on all charges. In a separate sentencing proceeding on the capital murder conviction, the jury recommended a sentence of death. The trial court imposed that sentence on February 20, 1991.

The Supreme Court of Virginia upheld George's conviction and sentence. His petition for writ of certiorari to the United States Supreme Court was denied on April 6, 1992, 503 U.S. 973, 112 S.Ct. 1591, 118 L.Ed.2d 308. Subsequently, George filed a petition for a writ of habeas corpus in the Circuit Court of Prince William County. The circuit court dismissed all claims raised in the petition on April 2, 1993. The Virginia Supreme Court denied a petition for appeal from the dismissal of George's state habeas petition. George's petition for writ of certiorari to the United States Supreme Court on that aspect was denied.

### Factual Background

In affirming George's conviction and sentence on direct appeal, the Virginia Supreme Court stated the facts of the case as follows:

The victim, fifteen-year-old Alexander Eugene Sztanko, lived with his parents in the City of Manassas. The family recently had moved from a home on Cardinal Drive in Woodbridge, and on Saturday, June 16, 1990, Alex and his parents went to the Woodbridge house to move "out all of the things [they had left] there."

After arriving at the Cardinal Drive address, Alex decided to ride his motorcycle along a power line easement that crossed his parents' property and extended into a nearby wooded area traversed by a number of trails. Mr. and Mrs. Sztanko last saw Alex alive about 2:00 p.m., when he rode into the woods. "[M]aybe half an

hour [or] an hour" later, Alex's father heard "two shots coming from the [wooded] area."

About 10:45 a.m. the next day, Corporal Joseph Dillon of the Prince William County Police Department, who was aware that Alex Sztanko was missing, observed a silver and blue Ford Bronco parked off the side of Cardinal Drive near the woods into which Alex had ridden. Dillon had seen the vehicle parked in the same location about 3:30 p.m. the day before. Dillon pulled in behind the vehicle, "ran the tag" through the Department of Motor Vehicles, and learned that the Bronco was registered in the name of Michael George.

Dillon then observed a "camouflage-clad subject" walking toward him from the south side of Cardinal Drive. The person started toward Dillon, and turned and ran eastwardly along the shoulder of Cardinal Drive, and entered the woods. When about ten feet into the woods, the person "knelt down for ... a few seconds, then came up and walked quickly deeper into the woods ... and ... turned and started walking in [Dillon's] direction." The person was "crouched as he was moving through the woods," making it appear to Dillon that he did not want to be seen.

"[S]haking very badly" and "sweating profusely," the person identified himself as Michael George, said he was looking for a place to go turkey hunting, and asked Dillon, "I'm not trespassing, am I?" Because the two "were standing right under [a] no trespassing sign" Dillon said, "[w]ell, according to this, obviously you are."

When Dillon asked George whether he had been in the area the day before, George replied forcefully in the negative. But when Dillon said he had seen George's vehicle there the day before and had observed the "tag on it," George said, "[o]h yeah, I was here yesterday." [1]

Dillon called for assistance, and, when another unit responded, he placed George under arrest for trespassing. After another officer had transported George from the scene, Dillon walked to the spot in the woods where George had "knelt down." There, Dillon found a pair of black tennis shoes, later identified as belonging to Alex Sztanko.

Dillon left the tennis shoes undisturbed. A blood hound was brought to the scene and taken to the shoes. From that point, the dog led police back to George's Bronco and then "right up through the woods" to where Alex Sztanko's body was located. The body was shoeless but otherwise clothed.

An autopsy revealed that Alex had suffered a single gunshot wound to the head, causing immediate loss of consciousness and rapid death. The autopsy also revealed abrasions of the penis which, in the opinion of the medical examiner, were consistent with an "electrical burning." Other expert testimony showed that Alex was still alive when the injuries to his penis were inflicted and that the "injuries would have been terribly painful."

Laboratory examination of the substances taken from Alex's clothing and body showed the presence of seminal fluid on his T-shirt and thigh, although the origin of this fluid could not be determined. A similar examination of "pubic area swabs and ... stains from [George's] underpants" showed the presence of seminal fluid "consistent with ... Mr. George and different from Mr. Sztanko." George's camouflage pants were stained with blood inconsistent with his blood type but consistent with Alex's. Fibers found on Alex's T-shirt were consistent with the material from which George's camouflage jacket was made.

At the time of his arrest, George was carrying a sheath knife, various keys, including a handcuff key, and a topographical map bearing a hand-drawn "x" corresponding to the spot where Alex's body was discovered and a hand-drawn "o" corresponding to the location where his motorcycle was found. A search of George's Bronco revealed a machete, a tear gas canister, and an electrical stun gun capable

---

1. In fact, Dillon had not noted the license number of George's vehicle the day before but had indicated otherwise to George in "an effort to get his response."

of producing the "electrical burning" of Alex's penis.

A search of George's room in his parents' home produced a pair of handcuffs. The key taken from George at the time of his arrest fit the handcuffs. Also found in George's room was a fully loaded nine millimeter pistol. Expert testimony established that this pistol fired the shot which caused Alex Sztanko's death.

While incarcerated awaiting trial, George told Roger Settle, a cell mate, that he had "stopped [Alex Sztanko] and got his attention," then "grabbed [him] and dragged him off of his bike back into the woods ... to have sex with [him]." George also told Settle that he sodomized Alex, "stunned the boy in his private parts several times," and "shot [him] in his head."

*George v. Commonwealth*, 242 Va. 264, 411 S.E.2d 12, 15–16 (1991).

### Discussion

In this, his first federal habeas petition, Petitioner has attacked his conviction and sentence on the following eleven grounds:

(A) The evidence of robbery was insufficient to support a conviction for capital murder.

(B) The prosecutor's reference to the victim and the impact of the victim's death in closing argument during the guilt phase of petitioner's trial rendered the trial fundamentally unfair in violation of the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution.

(C) The Supreme Court of Virginia should have found that Petitioner's conviction and sentence were the product of passion, prejudice and other arbitrary factors because of the consolidation for trial of the intent to defile charge with the capital murder and robbery charges, and its failure to so find was a violation of Petitioner's due process rights.

(D) Petitioner's Sixth Amendment right to counsel was violated when the Commonwealth presented testimony from petitioner's cell mate regarding statements made by the Petitioner.

(E) The trial court unduly restricted petitioner's ability to present a defense to the "vileness" predicate for a death sentence.

(F) The trial court violated Petitioner's right to due process when it permitted the Commonwealth to present evidence of George's cruelty to animals during the sentencing phase of the trial.

(G) The trial failed to conduct a proper voir dire in the manner mandated by *Ross v. Oklahoma* and *Morgan v. Illinois.*

(H) The trial court erred in failing to exclude for cause a potential juror whose son was a pallbearer at the victim's funeral.

(I) Virginia's "vileness" predicate is unconstitutionally vague as applied.

(J) The death penalty in Virginia is disproportionate and discriminatory as applied.

(K) The Supreme Court of Virginia fails to provide an adequate and meaningful appellate review of the death penalty.

Respondent argues that George's petition must be dismissed because all of George's claims are either procedurally defaulted, barred by the "new rule" doctrine of *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), or without merit.

### Review of a Motion to Dismiss a Section 2254 Petition

This Court's review of George's petition must be restricted to the inquiry of whether his confinement is in violation of the federal Constitution or laws. 28 U.S.C. § 2241(c)(3). Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts provides that "[t]he Federal Rules of Civil Procedure, to the extent that they are not inconsistent with these rules, may be applied, when appropriate, to petitions filed under these rules."

Respondent has moved to dismiss George's petition pursuant to Rule 12(b)(6) of the Fed-

eral Rules of Civil Procedure. When determining a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court must accept the facts alleged in the complaint as true and construe them in favor of the plaintiff. *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). A plaintiff need not set out in detail the facts upon which the claim is based; it is required only that plaintiff make a short and plain statement of the claim sufficient to give the defendant fair notice of what the claim is and the grounds upon which it rests. *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). A court should grant a motion to dismiss only when it appears to a certainty that the plaintiff would not be entitled to relief under any state of facts which could be proven in support of the claim. *Islam v. Jackson,* 782 F.Supp. 1111, 1113 (E.D.Va.1992).

### Exhaustion, Procedural Default, and "New Rule" Doctrine

Before a Section 2254 petitioner may have his claims reviewed on the merits, he must overcome several pitfalls that require appropriate consideration.

#### 1. Exhaustion

 The petitioner bears the burden of exhausting all state court remedies through direct appeal and state habeas proceedings— a requirement that is strictly enforced in the interest of giving the state courts the first opportunity to consider any alleged errors. *See Rose v. Lundy,* 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982). Virginia has recently enacted a statute which precludes state courts from considering a state habeas petition unless it is filed

within sixty days of after the earliest of: (i) denial by the United States Supreme Court of a petition for a writ of certiorari to the judgment of the Supreme Court of Virginia on direct appeal, (ii) a decision by the United States Supreme Court affirming imposition of the sentence of death when such decision is in a case resulting from a granted writ of certiorari to the judgment of the Supreme Court of Virginia

on direct appeal, or (iii) the period for filing a timely petition for certiorari has expired without such a petition being filed.

Va.Code § 8.01–654.1 (1995 Cum.Supp.).

Before this statute was enacted, a federal court would customarily dismiss an unexhausted claim on federal habeas so that the petitioner could first bring the claim in a state habeas petition, thereby exhausting his claim. Now, however, it appears that the petitioner cannot exhaust his unexhausted claims in state court if, as here, the sixty-day period has passed.

At least two of George's claims were never brought in any state court proceeding. These claims are therefore unexhausted. The sixty-day period referred to having passed, Petitioner has procedurally defaulted on these claims.

#### 2. Procedural Default

 Where a petitioner fails to comply with a state procedural requirement, such as the requirement of contemporaneous objection at trial to preserve an issue for appeal, and the failure provides adequate and independent grounds for the state court's denial of relief, federal review of the issue will also be barred where the state court has expressly relied on procedural default. *See Harris v. Reed,* 489 U.S. 255, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989); *Murray v. Carrier,* 477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986); *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). Moreover, where the state court is not given the opportunity to apply its procedural bar, a federal court is bound to bar the claim where, as in this cause, application of the bar is clear. *Coleman v. Thompson,* 501 U.S. 722, 735 n. *, 111 S.Ct. 2546, 2557 n. *, 115 L.Ed.2d 640; *Teague v. Lane,* 489 U.S. 288, 297–99, 109 S.Ct. 1060, 1068–69, 103 L.Ed.2d 334 (1989).

In Virginia, the following procedural rules are relevant to the issue of procedural default in habeas proceedings:[2]

1. Except for good cause shown or to attain the ends of justice, any objection

---

**2.** See also Va.Code § 8.01–654.1 noted herein.

not contemporaneously made when error was committed cannot be asserted on appeal. Va. Supreme Court Rules 5:25, 5A:18; *see Conquest v. Mitchell,* 618 F.2d 1053 (4th Cir.1980).

2. State habeas review is barred by the failure to raise an issue at trial and on direct appeal. *Slayton v. Parrigan* [215 Va. 27], 205 S.E.2d 680 (Va.1974).

3. A state habeas petitioner's failure to raise a claim in his appeal of the circuit court's denial of habeas relief constitutes procedural default of such a claim. *Whitley v. Bair,* 802 F.2d 1487 (4th Cir.1986).

■ Where a petitioner is precluded from bringing a claim on federal habeas review because he has procedurally defaulted his claim, he may escape the procedural bar by showing good *cause* for his failure to preserve the issue and *prejudice* resulting from the constitutional violation. *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977).

### 3. "New Rule" Doctrine

■ Where a federal habeas petitioner seeks relief by application of a constitutional rule, the Court must examine the rule to determine whether it had been announced at the time the petitioner's conviction became final. Whether a rule announced *after* a conviction has become final should be applied retroactively on collateral review was addressed by the Supreme Court in *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989). *Teague* holds that if a rule is a "new rule," it should not be applied retroactively on collateral attack unless it fits into one of two narrow exceptions.[3] Since *Teague,* the Supreme Court has articulated a test to determine whether a rule is a "new rule" such that it should not be applied retroactively:

Subject to two narrow exceptions, a case that is decided after a defendant's conviction and sentence become final may not provide the basis for federal habeas relief if it announces a "new rule." ... Though we have offered various formulations of what constitutes a new rule, put "meaningfully for the majority of cases, a decision announces a new rule 'if the result was not dictated by precedent existing at the time the defendant's conviction became final.'"

*Gilmore v. Taylor,* —— U.S. ——, ——, 113 S.Ct. 2112, 2116, 124 L.Ed.2d 306 (quoting *Butler v. McKellar,* 494 U.S. 407, 412, 110 S.Ct. 1212, 1216, 108 L.Ed.2d 347 (1990)).

■ Where the petitioner requests the court not to apply a rule announced after his conviction became final, but to adopt a rule not previously announced, the court must first determine whether such a rule would be retroactively applied if adopted. If the court determines that the rule, if adopted, would not be retroactively applied, then the court should dismiss the claim without reaching the merits. *Penry v. Lynaugh,* 492 U.S. 302, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989). Under *Teague,* supra, a court faced with this situation should proceed in three steps. First, the court must ascertain the date on which the conviction and sentence became final. Second, the court must determine whether a state court considering the defendant's claim on that date would have felt compelled by existing precedent to conclude that the rule sought by the petitioner was required by the Constitution. Third, even if the court determines that the defendant seeks the benefit of a new rule, the court must decide whether the rule falls into one of the two *Teague* exceptions. *Caspari v. Bohlen,* —— U.S. ——, 114 S.Ct. 948, 127 L.Ed.2d 236 (1994).

Even if the court determines that the petitioner does not seek to apply or adopt a "new rule," the court must still "inquire whether granting the relief sought would *create* a new rule because the prior decision is applied in a novel setting, thereby extending the precedent." *Stringer v. Black,* 503 U.S. 222, 112 S.Ct. 1130, 117 L.Ed.2d 367 (1992) (emphasis added). The Court should be mindful, how-

---

**3.** Under *Teague,* even a "new rule" should be applied retroactively if (1) it "plac[es] certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe," or (2) it is a "watershed rule[] of criminal procedure," implicating the fundamental fairness and accuracy of the criminal proceeding. *Teague,* 489 U.S. at 307, 311, 109 S.Ct. at 1073, 1075.

ever, that the "new rule" doctrine is not necessarily implicated every time the court applies an established standard to a new set of facts. *Id.,* 503 U.S. at 222, 112 S.Ct. at 1132.

### A. *Sufficiency of the Evidence on the Robbery Predicate*

To convict a defendant of capital murder, a jury must find that the defendant committed deliberate, wilful, premeditated murder in addition to one of several enumerated predicate offenses. Va.Code § 18.2–31. The predicate offense relied upon by the Commonwealth in its prosecution of George was the commission of a robbery while armed with a deadly weapon. Va.Code § 18.2–31(4). At trial, the Commonwealth claimed George had robbed Alex Stzanko of his motorcycle, motorcycle helmet, wallet, and shoes. George now contends that the evidence at trial was insufficient to sustain a conviction for commission of robbery of any of these items while armed with a deadly weapon.

▆▆ In evaluating a claim of insufficiency of the evidence, the reviewing court must view the evidence in the light most favorable to the prosecution. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). A reviewing federal court must give deference to the findings of fact by the state courts and this presumption of correctness applies to facts found by appellate as well as trial courts. *Sumner v. Mata,* 449 U.S. 539, 545–47, 101 S.Ct. 764, 768–69, 66 L.Ed.2d 722 (1981); 28 U.S.C. § 2254(d).[4]

▆▆ The critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson,* 443 U.S. at 318, 99 S.Ct. at 2788. "But this inquiry does not require a court to ask itself

whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt. Instead, the relevant question is whether, after reviewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 318–19, 99 S.Ct. at 2788–89 (emphasis in original) (internal citations and quotation marks omitted). A federal judge is not permitted to substitute his own subjective determination of guilt or innocence for that of the fact finder. *Tuggle v. Thompson,* 57 F.3d 1356, 1370 (4th Cir.1995).

Respondent and Petitioner agree that, in Virginia, robbery is defined as "the taking, with intent to steal, of the personal property of another, from his person or presence, against his will, by violence or intimidation." *Branch v. Commonwealth,* 225 Va. 91, 300 S.E.2d 758, 760 (1983); *Pierce v. Commonwealth,* 205 Va. 528, 138 S.E.2d 28, 31 (1964). It is Petitioner's contention that in order for the conviction for robbery to stand, the requisite intent to steal must be formed before a defendant kills his victim. Petitioner cites *Branch,* in which the Virginia Supreme Court reversed the defendant's conviction for robbery where the defendant had killed his victim and after killing him decided to take his wallet and dispose of it. The court emphasized that the critical question was "whether the robbery was the motive for the killing" and reversed Branch's robbery conviction because it concluded that Branch's conduct both before and after the killing negated any inference that Branch had conceived an intent to rob at the time he shot his victim. *Branch,* 300 S.E.2d at 760. Thus, argues Petitioner, in order to sustain his conviction for the robbery predicate, the evidence must have established that he harbored the intent to steal at the time he killed Sztanko. Petitioner urges that there was not sufficient evidence at trial to support the

---

**4.** Section 2254(d) provides:

In any proceeding instituted in a Federal court by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination after a hearing on the merits of a factual issue, made by a State court of competent jurisdiction in a proceeding to which the applicant for the writ

and the State or an officer or agent thereof were parties, evidenced by a written finding, written opinion, or other reliable and adequate written indicia, shall be presumed to be correct, unless the applicant shall establish or it shall otherwise appear, or the respondent shall admit [that one of eight grounds for challenging state court determinations exists].

conclusion that George harbored the intent to steal either the motorcycle, the motorcycle helmet, the wallet or the shoes at the time he killed Sztanko. Moreover, Petitioner argues that the evidence did not show that he *ever* formed an intent to steal any of these items.

 Under Virginia law, where a capital murder charge is based upon the robbery predicate, the intent to steal must be present before or during the killing, while the actual taking may occur after the killing. George raised his sufficiency of the evidence claim on direct appeal, and the Virginia Supreme Court stated:

Murder in the commission of robbery is a killing which takes place before, during, or after the robbery and is so closely related thereto in time, place, and causal connection as to make the killing part of the same criminal enterprise as the robbery.

*George v. Commonwealth of Virginia* (1991), 242 Va. 264, 411 S.E.2d 12, 20 (citing *Bassett v. Commonwealth*, 222 Va. 844, 284 S.E.2d 844, 851–52 (1981), *cert. denied*, 456 U.S. 938, 102 S.Ct. 1996, 72 L.Ed.2d 458 (1982); *Whitley v. Commonwealth*, 223 Va. 66, 286 S.E.2d 162, 166 (1981), *cert. denied*, 459 U.S. 882, 103 S.Ct. 181, 74 L.Ed.2d 148 (1982)). In *Whitley*, one of the cases relied upon by the *George* court on direct appeal, the defendant himself testified that he had killed the victim and then dragged her to her bedroom and attempted to place her on the bed. *Whitley*, 286 S.E.2d at 165. The defendant further testified that "[a]bandoning his effort to get her body on the bed, he 'ransacked' the house, 'looking for a gun.' Finding none, he took Mrs. Parsons' car keys and credit cards from her purse, replaced the purse on its hook, left by the back door, and fled in Mrs. Parsons' car." *Id.* At trial, armed robbery was the predicate for the Whitley's capital murder conviction, and, on appeal, the defendant challenged the sufficiency of the evidence on the robbery predicate, raising much the same argument as George raises here. He claimed that his conviction could not be sustained unless there was evidence that he formed the specific intent to steal from the victim either before or during the killing.

*Id.*, 286 S.E.2d at 166. The Attorney General responded to this argument by suggesting:

that the language of Code § 18.2–31(d) could be construed to mean that first degree murder is a capital offense when the killing and the crime of armed robbery are part of a continuing criminal enterprise. So construed, the statute does not require the Commonwealth to prove the coexistence of the intent to kill and the intent to steal.

*Id.* The court declined to decide the viability of this specific construction of the capital murder statute, concluding instead that the evidence supported Whitley's conviction without the help of such a construction. In so concluding, the court stated:

Robbery, defined at common-law as "the taking, with intent to steal, of the personal property of another, from his person or in his presence, against his will, by violence or intimidation," is a crime against the person of the victim rather than a crime against property. While the violence or intimidation must precede or be concomitant with the taking, it is immaterial that the victim is dead when the theft occurs. For purposes of the common-law definition, a corpse is a "person" if "the taking occurs minutes after the victim is killed." *Wm. Patterson v. Commonwealth* [222 Va. 653], 283 S.E.2d 212, 219 (1981). The question, then, is whether robbery was the motive for the killing. Criminal intent, a state of mind, may be, and often must be, shown by circumstantial evidence. *Ridley v. Commonwealth* [219 Va. 834], 252 S.E.2d 313, 314 (Va.1979). Whitley contends that, in light of the circumstances disclosed by his extra-judicial statements and the physical evidence, the jury should have found that the killing was the act of a "sexual psychopath" and that the larceny was committed "only as an after-thought." But the fact that the larceny did not occur until after he had killed his victim does not prove that his decision to steal was an after-thought. And the jury logically could have concluded that both sex and robbery motivated his conduct.

*Whitley*, 286 S.E.2d at 166. Thus, the Virginia Supreme Court has unequivocally stated

that the fact that the taking occurs after the killing does not preclude a conviction for the robbery predicate for capital murder. The critical question, then, is whether robbery was, at least in part, the motive for the killing. Assuming for the moment that George did in fact take the motorcycle, motorcycle helmet, wallet and shoes, the fact that the taking of these did not occur until after he killed Sztanko does not prove that his decision to steal was an after-thought, and, as the Virginia Supreme Court did in *Whitley*, this Court concludes that the jury could have found that the robbery in part motivated the killing.

Petitioner also urges that the evidence was insufficient to support the conclusion that he, in fact, took any of the specified items. On direct appeal, the Virginia Supreme Court found sufficient evidence that George stole Sztanko's motorcycle and helmet and did not address whether there was sufficient evidence concerning Sztanko's wallet and shoes.

■ Keeping in mind that the Court must not substitute its own opinions for those of the jury and should not scrutinize the reasoning process used by the factfinder, the Court concludes that there was sufficient evidence from which a rational trier of fact could conclude that George intended to take Sztanko's motorcycle and helmet and that such intention was at least in part the motivation for the killing. At trial, Roger Settle, a fellow inmate in George's cellblock, testified that George told him that he dragged Sztanko off of his motorcycle. The motorcycle and helmet were found twenty to twenty-two feet from a trail through the woods[5], about five tenths of a mile from the point where Alex's body was found. When George was arrested the morning after the murder, a topographical map was found on his person. There was a hand-drawn "o" on the map corresponding to the location where the motorcycle was found. The Virginia Supreme Court found that these markings "obviously were made after the murder had occurred and the motorcycle and helmet had been

moved from the trail to the point where they were later found, showing George's guilty involvement in that movement." *George,* 411 S.E.2d at 21. Considering the evidence in the light most favorable to the prosecution, the Court concludes that the record evidence could reasonably support a finding of guilt beyond a reasonable doubt.

**B. Reference to the Victim and Impact of Victim's Death in Prosecutor's Closing Argument**

During closing argument concerning the guilt of George, the prosecutor stated the following:

> You have a mother and a father who you saw here during the course of this trial. You have to think about them. You should think about them in fixing punishment in these cases. A father who works his entire life to provide opportunities for his son. Who watches him grow, develop in a way he would like him to ... A mother who goes down into the very shadow of death to give life to a new human being who watches him from afar with tenderness and kindness and goes down in despair when Michael George pulls the trigger.

Tr., Vol. IV at p. 38. George moved for a mistrial based on the prosecutor's remarks, claiming that such remarks violated his Fifth, Sixth, Eighth, and Fourteenth Amendment rights. The trial court denied George's motion and ruled in the presence of the jury that arguments addressing the impact of George's crimes were expressly directed and confined to the issue of punishment for the non-capital felonies.

In his petition, George argues that victim impact arguments "have long been condemned as improper." Pet. at 14. Petitioner cites *McReynolds v. Commonwealth,* 177 Va. 933, 15 S.E.2d 70 (1941), and *Dingus v. Commonwealth,* 153 Va. 846, 149 S.E. 414 (1929), in which the Virginia Supreme Court reversed convictions because of statements made in the closing arguments of the prose-

---

5. The motorcycle and helmet were actually found by a group of youths who had been swimming nearby. The youths took the motorcycle and helmet and later showed the police where they were found. Upon examining the location where the youths said they found the motorcycle, one of the police officers observed an indentation consistent with a kick stand "impacting the ground."

cution which were similar to the remarks made in this case. Petitioner also points to the decision of the United States Supreme Court in *Payne v. Tennessee,* 501 U.S. 808, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991), in which the Supreme Court expressly held that victim impact arguments were appropriate at the sentencing phase of a capital murder trial. According to Petitioner, the *Payne* Court noted a constitutional constraint on victim impact evidence in stating:

> In the event that evidence is introduced that is so unduly prejudicial that it renders the trial fundamentally unfair, the Due Process Clause of the Fourteenth Amendment provides a mechanism for relief.

*Payne,* 501 U.S. at 825, 111 S.Ct. at 2608. It is Petitioner's contention that the prosecutor's victim impact arguments during the guilt phase of his trial rendered his trial fundamentally unfair in violation of the Due Process Clause of the Fourteenth Amendment.

Respondent, on the other hand, argues that Petitioner's victim impact claim is precluded by the "new rule" doctrine of *Teague* and its progeny because to grant relief on this claim, the Court would have to create a new rule. Respondent also argues that the claim is without merit.

The Court is of the opinion that while George's claim is not barred by the new rule doctrine, the claim is without merit. In its brief in opposition to Respondent's motion to dismiss, Petitioner makes clear that his victim impact claim challenges the fundamental fairness of his trial as measured by the Due Process Clause of the Fourteenth Amendment. This Court is of the opinion

that a habeas petitioner may raise such a claim and is entitled to relief if the evidence introduced or remarks made during either the guilt or the penalty phase of his trial rendered his trial fundamentally unfair. *See Payne,* 501 U.S. at 825, 111 S.Ct. at 2608; *Darden v. Wainwright,* 477 U.S. 168, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1985) ("The relevant question is whether the prosecutors' comments "so infected the trial with unfairness as to make the resulting conviction a denial of due process."). Clearly, this rule was in place at the time George's conviction became final. Thus, George may raise in his federal habeas petition the claim that the specific victim impact arguments made during the prosecutor's closing argument in the guilt phase of the trial were so unduly prejudicial as to make the resulting conviction a denial of due process.[6]

Nevertheless, the Court concluded that the remarks made by the prosecution in this case did not rise to the level of a due process violation. At the time of George's trial, all non-capital felonies were tried in a unitary proceeding wherein juries were required to determine both guilt and penalty in the same proceeding. *See Snider v. Cox,* 212 Va. 13, 181 S.E.2d 617 (1971); Va.Code § 19.2–295. George's non-capital offenses were tried with his capital charge and it was appropriate for the prosecution to remark on victim impact as proper for the sentencing body to consider in determining the penalty for the non-capital offenses. *See Payne v. Tennessee,* 501 U.S. 808, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991). Moreover, the potential for prejudice from improper argument is far less at the guilt phase than in the penalty phase. *See Darden v. Wainwright,* 477 U.S.

---

6. Respondent argues that Petitioner may not make this claim because although it does not seek application of a "new rule," it asks the Court to create a "new rule" by applying an old rule in a novel setting. *Stringer, supra.* However, the Court should be mindful that it is not applying a new rule of law each time it applies an established standard to a new set of facts. *Stringer,* 503 U.S. at 222, 112 S.Ct. at 1132. Where a petitioner seeks application of an established standard to the facts of his case, but the facts of his case do not support the application of the standard, it is difficult to discern whether the petitioner seeks creation of a new rule or merely has a meritless claim. In this instance, the Court

could plausibly say that George's claim is barred by the "new rule" doctrine because he asks the Court to hold that victim impact arguments during the guilt phase are unconstitutional which is not a result that was dictated by precedent at the time George's conviction was affirmed. A better approach, however, is to look at George's claim in broad strokes and not bar it with a threshold determination that he seeks a new rule. Rather, the Court should consider that George seeks to apply to the facts of his case the established standard that if a prosecutor's comments in closing argument so infect the trial with unfairness, the defendant's Due Process rights are violated.

168, 183 n. 15, 106 S.Ct. 2464, 2472 n. 15, 91 L.Ed.2d 144 (1985). Based on these considerations, the Court is satisfied that the remarks made by the prosecution concerning Sztanko and the impact of his murder on his family were not "so unduly prejudicial" as to render George's trial fundamentally unfair in violation of the Due Process Clause. George's victim impact claim is without merit and will be dismissed.

### C. Claim that Consolidation of Intent to Defile Charge with Capital Murder Charge Caused Petitioner's Conviction and Sentence to be the Product of Passion, Prejudice and Arbitrary Factors in Violation of Due Process Rights

Petitioner claims that the introduction of evidence concerning homosexual defilement "during the guilt phase of the capital and non-capital trial created an impermissible risk that the jury convicted George of capital murder based upon passion, prejudice and arbitrary factors." Pet.'s Opp. at 28. In support of this claim, Petitioner cites *Gregg v. Georgia*, 428 U.S. 153, 189, 96 S.Ct. 2909, 2932, 49 L.Ed.2d 859 (1976), for the proposition that the Eighth and Fourteenth Amendment guarantee that a death sentence and conviction may not be imposed arbitrarily or capriciously.

Respondent counters that this claim is procedurally defaulted and is without merit.[7] Respondent contends that this claim as now stated by Petitioner is not the same claim as was raised on direct appeal and reiterated in state habeas proceedings. According to Respondent, Petitioner's claim on direct appeal focused entirely on the sentencing decision, arguing that "the evidence by the Commonwealth at sentencing brought forth allegations of homosexual tendencies and cruelty to animals in a clear invitation to the jury to focus not on the charge carrying the death penalty but on the defilement." Def. Dir. Appeal Brief at 43–44. Respondent asserts that in order to avoid the pitfalls of exhaustion and procedural default, a petitioner's claims on federal habeas must be identical to those raised in state proceedings. *See Anderson v. Harless*, 459 U.S. 4, 103 S.Ct. 276, 74 L.Ed.2d 3 (1982); *Pitchess v. Davis*, 421 U.S. 482, 95 S.Ct. 1748, 44 L.Ed.2d 317 (1975); *Picard v. Connor*, 404 U.S. 270, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971). The exhaustion requirement necessitates that the state court system have had an opportunity to address every claim raised in a federal habeas proceeding. Where a federal habeas petition contains some exhausted and some unexhausted claims, it is often proper for the district court to dismiss the entire petition, allow the petitioner to exhaust all of his claim and then bring all claims together in federal court. In Virginia, however, the legislature has recently enacted a statute which precludes a prisoner from filing a petition for state habeas more than sixty days after the earliest of: (i) denial by the United States Supreme Court of a petition for a writ of certiorari to the judgment of the Supreme Court of Virginia on direct appeal, (ii) a decision by the United States Supreme Court affirming imposition of the sentence of death when such decision is in a case resulting from a granted writ of certiorari to the judgment of the Supreme Court of Virginia on direct appeal, or (iii) the period for filing a timely petition for certiorari has expired without such a petition being filed. Va.Code § 8.01–654.1 (1995 Cum.Supp.).

According to Respondent, Petitioner having failed to raise exactly the same claim as he now asserts either on direct appeal or in state habeas proceedings, and under Virginia Code section 8.01–654.1, he was precluded from raising it in state court. Respondent urges that Petitioner has procedurally defaulted this claim and thus cannot raise it in his federal habeas petition without a showing of cause and prejudice. *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). Respondent concludes that this claim should be dismissed because Petitioner has pled no facts demonstrating cause for his default on this claim.

Respondent also argues that this claim should be dismissed because it is without

---

7. Respondent also originally argued that this claim was barred by the "new rule" doctrine; however, once Petitioner clarified his claim in his opposition brief, Respondent focused on the procedural default and merits of the claim.

merit. Respondent contends that the evidence of homosexual defilement was relevant evidence in the murder case because it corroborated a witness's testimony that George admitted that he had performed an act of forcible sodomy on his victim. Respondent also contends that the evidence that Sztanko had been burned in his genitals by electrical shocks was relevant to prove the identity of George as the murderer, because of the electric stun gun found in George's possession. *See* pp. 1074–75 supra.

This claim, in the Court's opinion, has been procedurally defaulted and because Petitioner has not shown or even alleged cause and prejudice, must be dismissed. Moreover the Court concludes that the claim is without merit. The evidence concerning defilement was properly admitted during the guilt phase because it was relevant to the non-capital charges. In addition, it was relevant to certain aspects of the capital murder charge as argued by the Respondent.

### D. *Claim that Sixth Amendment Rights were Violated by Admission of Testimony of Roger Settle*

Petitioner raises a *Massiah/Henry* claim premised on the theory that post-indictment statements he made to a jailhouse informant were elicited from him by the government in violation of his Sixth Amendment right to counsel. *See Massiah v. United States,* 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964); *United States v. Henry,* 447 U.S. 264, 100 S.Ct. 2183, 65 L.Ed.2d 115 (1980). Respondent, in addition to refuting petitioner's claim on the merits and arguing that the claim is barred by the "new rule doctrine," also contends that because petitioner has never raised his Sixth Amendment claim in any prior state proceeding he has now procedurally defaulted this claim.

■ Where a petitioner fails to comply with a state procedural requirement and the failure provides adequate and independent grounds for the state court's denial of relief, federal review of the issue will also be barred where the state court has expressly relied on procedural default. *See Harris v. Reed,* 489 U.S. 255, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989); *Murray v. Carrier,* 477 U.S. 478, 106

S.Ct. 2639, 91 L.Ed.2d 397 (1986); *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). Moreover, where the state court is not given the opportunity to apply its procedural bar, a federal court should nevertheless bar the claim where application of the bar is clear. *Coleman v. Thompson,* 501 U.S. 722, 735 n. *, 111 S.Ct. 2546, 2557 n. *, 115 L.Ed.2d 640; *Teague v. Lane,* 489 U.S. 288, 297–99, 109 S.Ct. 1060, 1068–69, 103 L.Ed.2d 334 (1989).

■ In Virginia, no writ will be granted on the basis of any legal or factual claim the petitioner could have made previously, but did not. *See Slayton v. Parrigan,* 215 Va. 27, 205 S.E.2d 680 (1974), cert. denied 419 U.S. 1108, 95 S.Ct. 780, 42 L.Ed.2d 804 (1975). Respondent, therefore, contends that because petitioner is clearly barred from raising his Sixth Amendment claim in state court he is procedurally barred from raising it on federal habeas review as well.

■ Where a petitioner is precluded from bringing a claim on federal habeas review because he has procedurally defaulted his claim, he may escape the procedural bar by showing *cause* for his failure to preserve the issue and *prejudice* resulting from the constitutional violation. *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977).

Given the importance of Roger Settle's testimony at the petitioner's trial and sentencing it cannot be seriously disputed that petitioner can show prejudice from the alleged Sixth Amendment violation. The key issue, therefore, is whether petitioner can demonstrate cause for his failure to raise this claim in any state proceeding.

■ To make the necessary showing of cause, petitioner must show that "some objective factor external to the defense impeded counsel's efforts to" assert or preserve the claim in a prior state proceeding. *Amadeo v. Zant,* 486 U.S. 214, 222, 108 S.Ct. 1771, 1776, 100 L.Ed.2d 249 (1988) (quoting *Murray v. Carrier,* 477 U.S. 478, 488, 106 S.Ct. 2639, 2645, 91 L.Ed.2d 397 (1986)). While a " 'tactical' or 'intentional' decision to forgo a procedural opportunity normally cannot constitute cause, 'the failure of counsel to raise a

constitutional issue reasonably unknown to him is one situation in which the [cause] requirement is met.'" *Amadeo,* 486 U.S. at 222, 108 S.Ct. at 1776 (quoting *Carrier,* 477 U.S. at 488, 106 S.Ct. at 2645 (1986)). Moreover, "a showing that the factual or legal basis for a claim was not reasonably available to counsel, or that 'some interference by officials' made compliance impracticable, would constitute cause under this standard." *Carrier,* 477 U.S. at 488, 106 S.Ct. at 2645.

Petitioner contends that he did not raise this issue at trial or on any direct appeal because at trial Settle denied that he had discussed George's case with the government prior to being placed in George's cell block. Thus, contends petitioner, his trial counsel had no basis to counter Settle's testimony.

Petitioner contends that the cause as to why he did not raise the Sixth Amendment claim during the state habeas proceedings is that his appointed counsel could not have "reviewed the trial record, reviewed the record on direct appeal, prepared a habeas petition, and conducted an independent investigation to develop this claim" within the 35 day period from the time habeas counsel was appointed on February 24, 1993 and the April 1, 1993 date before which the state court had ordered the state habeas petition filed. (Memorandum in Opposition to Respondent's Motion to Dismiss, p. 35).

Respondent rebuts that after Petitioner's sentence was confirmed on direct appeal the United States Supreme Court denied certiorari review on April 6, 1991. (Respondent's Rebuttal Brief in Support of Motion to Dismiss). Petitioner did not seek a rehearing. *Id.* Four months later, on August 6, 1992, counsel for the respondent notified petitioner with a letter that he should request counsel for state habeas representation or file a habeas petition on his own by September 15, 1992 or an execution date would be set. *Id.* Petitioner did not take either course of action and on January 29, 1993 an April 14, 1993 execution date was set. *Id.* Petitioner requested habeas counsel two weeks later on February 11, 1993. *Id.* The state court then requested that Petitioner's habeas petition be filed by April 1, 1993 so that it could be considered by the execution date. *Id.*

Respondent contends that although petitioner's state habeas counsel may have had 35 days from the time of appointment until the date the habeas petition was due, this cannot constitute cause for Petitioner's failure to raise the Sixth Amendment claim because Petitioner had 359 days from the denial of certiorari by the United States Supreme Court during which to prepare his habeas petition and that any rush created by petitioner's own delay cannot constitute cause.

■ Respondent has the better argument. In *Pennsylvania v. Finley* the Supreme Court held that the States were not required to provide lawyers to petitioners in state habeas proceedings. 481 U.S. 551, 556–57, 107 S.Ct. 1990, 1993–94, 95 L.Ed.2d 539 (1987). In determining that unrepresented petitioners were not denied the equal protection guarantee of "meaningful access" the Court stated that a petitioner's "access to the trial record and the appellate briefs and opinions provided sufficient tools for the pro se litigant to gain meaningful access to courts that possess a discretionary power of review." *Id.* This reasoning suggests that in a case such as this, where the petitioner himself had nearly one year from the time the Supreme Court denied certiorari until the day on which his state habeas petition was due, the fact that appointed counsel had only 35 days does not constitute cause under *Wainwright* for having failed to raise the Sixth Amendment claim.

### E. *Claim that Petitioner was Restricted in His Ability to Defend Against the Commonwealth's "Vileness" Case by Failure of Trial Court to Appoint an Investigator*

■ Virginia law provides that a jury may impose the death sentence if it finds that the conduct "for which [the defendant] stands charged was outrageously or wantonly vile, horrible or inhuman in that it involved torture, depravity of mind or an aggravated battery to the victim." Va.Code § 19.2–264.2(1). Petitioner claims that the Commonwealth supported the vileness predicate for the death penalty by pointing to evidence at trial that George had sexually tortured

and sodomized his victim. There were two doctors who testified at trial concerning the burn marks on Sztanko's genitals and their consistency with the electric stun gun found in George's possession, Drs. Sehn and Field. At trial, George's counsel requested an investigator to assist with the preparation of a defense to the "vileness" case. The trial court refused. Petitioner now claims that the failure of the trial court to appoint an investigator was a violation of his due process rights. George asserts that if the court had appointed an investigator, he would have been able to have the investigator interview Drs. Sehn and Field prior to trial to discuss their conclusions, which would have assisted in the preparation of cross-examination.

Respondent counters that Petitioner's investigator claim is barred by the "new rule" doctrine and is without merit.

In a recent Fourth Circuit case, a habeas petitioner attempted to raise the claim that the state court's refusal to appoint a private investigator for the defense contravened due process. *Gray v. Thompson*, 58 F.3d 59, 66 (4th Cir.1995). In refusing to entertain the claim, the Fourth Circuit stated:

> The Supreme Court ... has flatly declined to address the question whether, "as a matter of federal constitutional law[,] what if any showing would [entitle] a defendant to [private] assistance." *Caldwell v. Mississippi*, 472 U.S. 320, 323–24 n. 1, 105 S.Ct. 2633, 2636–37 n. 1, 86 L.Ed.2d 231 (1985). By resolving that question, we would clearly be breaking new constitutional ground. Such would create a "new

rule" imposing a new obligation on the [s]tates. *See Jackson v. Ylst*, 921 F.2d 882, 885–86 (9th Cir.1990) (declining to address same question).

*Gray*, 58 F.3d at 66. Thus, the Fourth Circuit has clearly instructed this Court that to resolve Petitioner's investigator claim would require the Court to announce a new rule of constitutional law.[8] The Supreme Court has enumerated the principle that a new rule may not be adopted in reviewing a challenge by a state prisoner to his conviction pursuant to 28 U.S.C. § 2254. Two exceptions to that rule have been created by the Court. *See Teague v. Lane*, 489 U.S. 288, 310–11, 109 S.Ct. 1060, 1075–76, 103 L.Ed.2d 334 (1989). Neither of the exceptions are applicable to the instant case. This claim will be dismissed.

**F. Claim that Admission of Evidence Concerning Cruelty to Animals Violated Petitioner's Due Process Rights**

The trial court, over the objection of defense counsel, permitted the Commonwealth to present testimony from one of George's childhood neighbors regarding George's alleged cruelty to her family's animals approximately twenty years prior to the trial. The testimony included descriptions of torturing and killing these animals. Respondent alleges that the Commonwealth presented this evidence to support not only the vileness predicate, but also the future dangerousness predicate for imposing the death penalty.[9] George contends that the admission of the

---

**8.** In his opposition memorandum, Petitioner acknowledges that *Gray* dictates that his investigator claim implicates the new rule doctrine; however, he asks the Court to disregard *Gray*, suggesting that it is of questionable precedential value in light of *Williams v. Martin*, 618 F.2d 1021, 1027 (4th Cir.1980). In the first place, this Court is not in a position to disregard the clear statement of its Court of Appeals. In the second place, *Williams v. Martin* is inapposite in that it concerned the refusal of the trial court to furnish the defendant with an independent forensic pathologist to serve as an expert witness concerning the cause of the victim's death and assist in the preparation and presentation of his defense.

**9.** The vileness and future dangerousness predicates are set forth in Virginia Code section 19.2–264 which provides:

> In assessing the penalty of any person convicted of an offense for which the death penalty may be imposed, a sentence of death shall not be imposed unless the court or jury shall (1) after consideration of the past criminal record of convictions of the defendant, find that there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing serious threat to society or that his conduct in committing the offense for which he stands charged was outrageously or wantonly vile, horrible or inhuman in that it involved torture, depravity of mind or an aggravated battery to the victim; and (2) recommend that the penalty of death be imposed.

graphic testimony regarding cruelty to animals was so highly inflammatory and prejudicial to the Petitioner as to deprive him of his due process rights under the United States Constitution. Petitioner bases his claim on the holding in *Gregg v. Georgia,* 428 U.S. 153, 189, 96 S.Ct. 2909, 2932, 49 L.Ed.2d 859 (1976) that the Due Process Clause guarantees a defendant the right to be free from an arbitrarily imposed death sentence.

Respondent argues that Petitioner's claim should be dismissed because he seeks a "new rule" and because it lacks merit.

The Court disagrees that the "new rule" doctrine bars Petitioner's claim. *Gregg* creates a claim that the death sentence was arbitrarily imposed. Additionally, a federal habeas petitioner may raise a claim that evidence introduced either at the guilt or the sentencing phase of his trial was so unduly prejudicial that it rendered the trial process fundamentally unfair. *Payne;* 501 U.S. at 825, 111 S.Ct. at 2608; *Estelle v. McGuire,* 502 U.S. 62, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991). Thus, while Petitioner may challenge the admission of evidence regarding cruelty to animals, in the instant case, in the Court's opinion, his effort must fail for the reasons which follow.

Respondent argues that the admission of such evidence was entirely proper because it was highly probative of future dangerousness. According to Respondent, because the behavior at issue occurred twenty years before, it demonstrated that "George's sadistic behavior emanated from a life-long character flaw, rather than a mental or emotional affliction of recent origin." Resp. Br. in Supp. of Mot. to Dism. at 28.

■ "[I]n determining the probability of a defendant's future criminal conduct, it is 'essential ... that the jury have before it *all possible relevant information* about the individual defendant whose fate it must determine.' " *Watkins v. Commonwealth,* 229 Va. 469, 331 S.E.2d 422, 436 (1985). Under Virginia law, unadjudicated criminal conduct is admissible to assist the jury in considering the defendant's potential violence. *Watkins,* 229 Va. 469, 331 S.E.2d 422, 435 (1985).

This rule of latitude—which also allows the defendant to present a wide range of mitigating evidence—was fashioned pursuant to the Supreme Court's instruction that "it [is] desirable for the jury to have as much information before it as possible when it makes the sentencing decision." *Gregg v. Georgia,* 428 U.S. 153, 204, 96 S.Ct. 2909, 2940, 49 L.Ed.2d 859 (1979).

*Gray,* 58 F.3d at 64.

■ In light of the latitude prescribed by Virginia law, the Fourth Circuit and the United States Supreme Court, the Court concludes that admission of the evidence concerning cruelty to animals was entirely appropriate and Petitioner fails to state a claim either that his death sentence was arbitrarily imposed under *Gregg,* supra, or that the animal evidence was so unduly prejudicial as to render the trial process fundamentally unfair under *Payne.* Accordingly, the Court will dismiss Petitioner's claim that admission of the evidence of his past cruelty to animals violated his due process rights.

### G. *Claim that the Trial Court Failed to Conduct a Proper Voir Dire*

The United States Supreme Court has recognized that the Sixth and the Fourteenth Amendments guarantee a capital defendant the right to a fair and impartial capital sentencing jury. *See Witherspoon v. Illinois,* 391 U.S. 510, 518, 88 S.Ct. 1770, 1775, 20 L.Ed.2d 776 (1968); *Ross v. Oklahoma,* 487 U.S. 81, 85, 108 S.Ct. 2273, 2276, 101 L.Ed.2d 80 (1988). In *Ross,* the Supreme Court recognized that a capital defendant could not be afforded such an impartial sentencing jury unless permitted to remove for cause a juror who would vote to impose death automatically upon a finding of guilt. *Ross,* 487 U.S. at 84–85, 108 S.Ct. at 2276–77. Recently, the Supreme Court confirmed that in order to ensure the existence of the impartial capital sentencing jury, a defendant must be afforded the opportunity, through voir dire, to identify those jurors held to be excludable under *Ross. Morgan v. Illinois,* 504 U.S. 719, 112 S.Ct. 2222, 119 L.Ed.2d 492 (1992).

At George's trial, the court asked the sentencing jury the following question:

If you were to sit as a juror in this case and the jury were to convict the defendant of capital murder, would you be able to consider voting for a sentence less than death?

Petitioner requested that the Court additionally ask the jurors whether they felt that the death penalty was the only appropriate punishment if he were convicted of capital murder. The trial court, however, refused to permit George's counsel to pose this question.

On direct appeal to the Virginia Supreme Court, George included the voir dire claim in his initial list of assignments of error, which is filed for the purpose of enabling counsel to determine what portions of the record are necessary to be included in the joint appendix on direct appeal. When he later filed his brief on direct appeal, he did not mention this assignment of error in any way. The Virginia Supreme Court, likewise did not mention George's voir dire claim in its opinion.

In state habeas proceedings, the circuit court expressly adopted by reference the arguments stated in the Commonwealth's motion to dismiss, including the argument that George's failure to brief the voir dire claim, followed by his failure to raise it in a petition for rehearing in the Supreme Court of Virginia, constituted a clear bar under *Slayton v. Parrigan*, 215 Va. 27, 205 S.E.2d 680 (1974), *cert. denied*, 419 U.S. 1108, 95 S.Ct. 780, 42 L.Ed.2d 804 (1975), in which the Virginia Supreme Court held that a prisoner is not entitled to use habeas corpus to circumvent the trial and appellate processes for an inquiry into an alleged nonjurisdictional defect of a judgment of conviction. On George's state habeas appeal, the Virginia Supreme Court rejected George's voir dire claim as procedurally barred and expressly applied the *Slayton* rule in doing so.

 Where a petitioner fails to comply with a state procedural rule, which failure provides adequate and independent grounds for the state's denial of relief, federal habeas review will also be barred where the state court expressly relied on the procedural default, absent a showing of cause and prejudice. *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). The Court concludes that because of the Virginia Supreme Court's express reliance on *Slayton* in rejecting George's voir dire claim on state habeas appeal there exists an adequate and independent state ground for its denial of relief, and the claim should be deemed procedurally barred from federal habeas corpus review. *Wainwright, supra.* Accordingly, the Court must dismiss George's voir dire claim unless he can show cause and prejudice.

 Petitioner claims, as to this claim, that he is able to show cause and prejudice. Petitioner contends that cause for procedural default includes constitutionally ineffective assistance of counsel or an act of the lawyer outside the scope of his agency relationship. *Coleman v. Thompson*, 501 U.S. 722, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). According to Petitioner, his counsel on direct appeal made a unilateral decision not to brief the voir dire claim, and because, so he argues, any death sentenced inmate would expect his lawyer to preserve this issue by properly presenting it on direct appeal, his lawyer's failure to do so constituted constitutionally deficient assistance of counsel. George claims that this ineffective assistance constitutes valid cause for his procedural default.

Respondent disputes George's proffered showing of cause on two grounds. First, Respondent claims that ineffective assistance of counsel cannot serve as cause for procedural default unless the ineffectiveness is itself asserted as an independent claim for habeas relief. *Justus v. Murray*, 897 F.2d 709 (4th Cir.1990). Respondent points out that no such ineffectiveness claim has been raised in these proceedings, and argues that because no such ineffective assistance claim was raised in state habeas, it could not now be raised in federal habeas. Second, Respondent asserts that the choice of what issues to brief on direct appeal is a quintessential example of the exercise of professional judgment which is not to be second-guessed in habeas corpus review on an ineffective assistance claim. *Jones v. Barnes*, 463 U.S. 745, 103 S.Ct. 3308, 77 L.Ed.2d 987

(1983); *Turner v. Williams,* 812 F.Supp. 1400, 1426 n. 35 (E.D.Va.1993).

■ The Court fully agrees with Respondent that Petitioner is unable to show cause both because he is barred at this stage from using counsel's ineffectiveness as cause to excuse a procedural default on direct appeal where a claim of ineffectiveness of counsel is not raised as an independent basis for relief and because his lawyer's decision not to brief the voir dire claim does not constitute ineffective assistance. Because Petitioner is unable to show cause, the Court must dismiss his voir dire claim as procedurally defaulted.[10]

## H. *Claim that Venireman Darry Should Have Been Excluded for Cause*

■ During voir dire, a member of the jury venire, Mr. Darry, informed the court that his son was a pall bearer at the victim's funeral. In light of this information, the following colloquy between defense counsel and venireman Darry ensued:

Q: The fact that your son was a pall bearer for the victim's funeral, which I assume means he was fairly close with the victim?

A: They were school chums.

Q: Would that situation keep you from being able to remain open minded or do you think that might cause you to form an opinion one way or the other?

A: No. I think I can still be open minded. I thought about that particular one, but I think I can still be.

Defense counsel moved to strike Darry for cause, but the trial court refused, as further colloquy revealed reasoning that Darry had never met the victim and had not discussed the case with his son. Defense counsel noted exception to the trial court's ruling and later used a peremptory strike to exclude Mr. Darry from the jury. Petitioner now argues

that failure to exclude Mr. Darry for cause violated his Fifth, Sixth, Eighth and Fourteenth Amendment rights.

Respondent moves to dismiss Petitioner's claim concerning venireman Darry, contending that because Darry did not actually sit on George's jury, no federal issue is presented. Respondent argues that any claim that the impartiality of the jury was not properly determined must focus on the jurors who actually sat. *See Ross v. Oklahoma,* 487 U.S. 81, 86, 108 S.Ct. 2273, 2277, 101 L.Ed.2d 80 (1988); *Patton v. Yount,* 467 U.S. 1025, 1037, 104 S.Ct. 2885, 2891, 81 L.Ed.2d 847 (1984).

In *Ross,* the Supreme Court did not find constitutional error where a juror should have been removed for cause in light of his view of the death penalty, but ultimately was excluded from the jury by virtue of a peremptory strike. The Court stated the following:

Petitioner was undoubtedly required to exercise a peremptory challenge to cure the trial court's error. But we reject the notion that the loss of a peremptory challenge constitutes a violation of the constitutional right to an impartial jury. We have long recognized that peremptory challenges are not of constitutional dimension.

*Ross,* 487 U.S. at 88, 108 S.Ct. at 2278. Moreover, the Court held that the Constitution is only implicated when the right to exercise peremptory challenges is denied or impaired. *Ross,* 487 U.S. at 89, 108 S.Ct. at 2278. Under Virginia law, it is prejudicial error for a trial court to force a petitioner, as here, to use a peremptory strike to exclude an impartial juror, *Breeden v. Commonwealth,* 217 Va. 297, 227 S.E.2d 734, 736 (1976), is of no consequence in these proceedings.

Accordingly, the Court will dismiss George's claim regarding venireman Darry.[11]

---

10. Even if the Court were to find that Petitioner could show cause, the Court should still dismiss Petitioner's claim because he is unable to show prejudice. His inability to show that fundamental fairness was implicated by the refusal of the trial court to ask the requested voir dire question is illustrated by the following discussion concerning the merits of this claim.

11. In the alternative, the Court could dismiss Petitioner's claim as barred by the "new rule" doctrine. Petitioner argues that his claim does present a federal issue because the *Ross* Court expressly did not "decide the … question whether … 'a denial or empowerment' of the exercise of peremptory challenges occurs if the defendant uses one or more challenges to remove jurors

## I. Claim that Virginia's "Vileness" Aggravating Factor is Unconstitutionally Vague

■ The trial court instructed the jury to consider whether George's conduct in committing the offenses was "outrageously or wantonly vile, horrible or inhuman, in that it involved torture or depravity of mind." Tr. Vol. V at 153. According to Petitioner, the trial court did not provide any limiting instruction by defining either "torture" or "depravity of mind." Petitioner claim that the vileness aggravator as applied in his case was unconstitutionally vague.

Respondent counters correctly that it is irrelevant whether the "vileness" aggravator was unconstitutionally vague because George's death sentence is independently supported by the jury's finding of "future dangerousness." *See Zant v. Stephens,* 462 U.S. 862, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983).

The Court must dismiss this claim because of the jury's finding of "future dangerousness." The jury instructions clearly informed the jury of what was required to have been established before they could fix the punishment of the defendant at death.[12] The Court finds that the jury did, indeed, make a separate finding of future dangerousness.[13]

## J. Claim that Virginia's Death Penalty is Applied Disproportionately and Discriminatorily Based on Gender and Financial Status

■ George alleges that in Virginia, the death penalty has been disproportionately imposed upon indigent males, in violation of the Fifth, Eighth, and Fourteenth Amendments. George acknowledges that he raises this claim for the first time in the instant federal habeas petition, but claims that it should be reviewed nonetheless because such a claim would be part of the Virginia Supreme Court's mandatory appellate review of George's death sentence pursuant to Virginia Code section § 17–110.1. Section 17–110.1 provides that in addition to consideration of any errors in the trial enumerated by the defendant on appeal, the Virginia Supreme Court must review a death sentence to determine whether it "was imposed under the influence of passion, prejudice or any other arbitrary factor." It is George's position that his claim of discriminatory application of the death penalty is precisely the kind of claim that falls within the court's mandatory appellate review and was thus implicitly rejected when the Virginia Supreme Court affirmed his death sentence. George reasons

---

who should have been excused for cause." *Ross,* 487 U.S. at 91 n. 4, 108 S.Ct. at 2280 n. 4 (quoting *Swain v. Alabama,* 380 U.S. 202, 219, 85 S.Ct. 824, 835, 13 L.Ed.2d 759 (1965)). According to Petitioner, this statement by the *Ross* Court allows it to bring a claim in federal court. However, the *Ross* footnote relied upon by Petitioner makes clear that this question has not been addressed or decided and "[b]y resolving that question, we would clearly be breaking new constitutional ground." *Gray,* 58 F.3d at 66. In relying on the *Ross* footnote, Petitioner seeks to have the Court announce a new rule regarding use of peremptory challenges. Under the "new rule" doctrine of *Teague* and its progeny, the Court is unable to announce such a rule.

**12.** In its instructions to the jury, the Court included the following: "Before the penalty can be fixed at death, the Commonwealth must prove beyond a reasonable doubt at least one of the following two alternatives.

First, that after consideration of his history and background there is a probability that he would commit criminal acts of violence that would constitute a continuing serious threat to society, or two, that his conduct in committing

the offense was outrageously or wantonly vile, horrible or inhuman in that it involved torture or depravity of mind.

If you find from the evidence that the Commonwealth has proved beyond a reasonable doubt either of the two alternatives and as to that alternative you are unanimous, then you may fix the punishment of the Defendant at death, or, if you believe from all the evidence that the death penalty is not justified, then you shall fix the punishment of the Defendant at life imprisonment."

**13.** The verdict of the jury specifically found that "after consideration of his history and background or of the circumstances surrounding the commission of the offense of which he is accused that there is a probability that he would commit criminal acts of violence that would constitute a continuing serious threat to society and having unanimously found that his conduct in committing the offense is outrageously or wantonly vile, horrible or inhuman in that it involved torture or depravity of mind and having considered the evidence in mitigation of the offense, unanimously fix his punishment at death."

that because of this implicit rejection, his claim was not procedurally defaulted and is now properly before the Court.

Because the Court concludes that Petitioner's discriminatory application claim is barred by the "new rule" doctrine, the Court need not reach the question of whether the Virginia Supreme Court's mandatory review saves the claim from procedural default.

In *McCleskey v. Kemp*, 481 U.S. 279, 107 S.Ct. 1756, 95 L.Ed.2d 262 (1987), the Supreme Court rejected defendant's claim that the death penalty was unconstitutional because statistical studies showed "persons who murder whites are more likely to be sentenced to death than persons who murder blacks, and black murderers are more likely to be sentenced to death than white murderers." In rejecting the claim, the Court stated:

> the claim that [the death] sentence rests on the irrelevant factor of race easily could be extended to apply to claims based on unexplained discrepancies that correlate to membership in other minority groups, and even to gender. . . . Also, there is no logical reason that such a claim need be limited to racial or sexual bias. If arbitrary and capricious punishment is the touchstone under the Eighth Amendment, such a claim could—at least in theory—be based upon any arbitrary variable, such as defendant's facial characteristics, or the physical attractiveness of the defendant or the victim, that some statistical study indicates may be influential in jury decisionmaking. As these examples illustrate, there is no limiting principle to the type of challenge brought by McCleskey. The Constitution does not require that a State eliminate any demonstrate disparate that correlates with a potentially irrelevant factor in order to operate a criminal justice system that includes capital punishment.

*McCleskey*, 481 U.S. at 315–19, 107 S.Ct. at 1780–82. *See also Turner v. Williams*, 812 F.Supp. 1400, 1419 (E.D.Va.1993) (stating that the reasoning in *McCleskey* would clearly extend to a rejection of similar studies based on gender or financial status and holding it was reasonable for defense counsel to forgo arguments based on gender or financial

status "as those arguments had no chance of succeeding").

Thus, Petitioner's discriminatory application claim is at odds with and clearly not dictated by Supreme Court precedent. In order to grant Petitioner relief on this claim, the Court would be required to announce a new rule of constitutional law. Consequently, the claim must be dismissed as barred by the "new rule" doctrine.

### K. Claim that Supreme Court of Virginia Provides Inadequate and Meaningless Appellate Review

Petitioner claims that because Virginia Code section 17–110.1 mandates review of a death sentence by the Virginia Supreme Court to determine if it was imposed under the "influence of passion, prejudice or any other arbitrary factor," a capital defendant has a due process right to such review. Petitioner claims that the review provided by the Virginia Supreme Court does not satisfy this due process right.

Respondent correctly points out that Petitioner has failed to address one single specific shortcoming of the Virginia Supreme Court's appellate review process. Moreover, the existence of such a claim has never been recognized or even alluded to by the United States Supreme Court. Accordingly, the Court must dismiss Petitioner's challenge to the state appellate process as barred by the "new rule" doctrine and as wholly unsupported and without merit.

### Conclusion

For the foregoing reasons, the Respondent's Motion to Dismiss will be granted as to all of Petitioner's claims.

An appropriate Order shall issue.